## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

TERESA BOCCELLI,

    Plaintiff,

v.            Case No: 2:15-cv-800-FtM-CM

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

---

## OPINION AND ORDER

  Plaintiff Teresa Boccelli seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs, and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.  Issues on Appeal[1]

  Plaintiff raises the following issues on appeal: (1) whether substantial evidence supports the finding of the Administrative Law Judge ("ALJ") that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy; (2) whether substantial evidence supports the determination of the ALJ concerning Plaintiff's Residual Functional Capacity ("RFC"); and (3) whether the Appeals

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Council properly evaluated new evidence.

## II.   Procedural History and Summary of the ALJ's Decision

On November 5, 2012, Plaintiff filed an application for disability and DIB alleging disability beginning August 21, 2010 due to osteoporosis, chronic injuries to her left fingers and wrist, chronic asthma and high blood pressure.   Tr. 52, 230. Plaintiff also had a myocardial infarction in April 2013.   Tr. 52, 589.   The application was denied initially and upon reconsideration.   Tr. 98-142.   Plaintiff requested and received a hearing, which was held before ALJ Henry J. Hogan on March 6, 2014.   Tr. 48-57.   Plaintiff was represented by counsel during the hearing, and Plaintiff and a vocational expert ("VE"), Dr. Amy Vercillo, testified at the hearing. Tr. 62-97.

On April 21, 2014, the ALJ issued a decision finding Plaintiff not disabled from August 21, 2010 through the date of the decision.   Tr. 48-57.   At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, and had not engaged in substantial gainful activity since August 21, 2010, the alleged onset date.   Tr. 50.   At step two, the ALJ determined that Plaintiff has the following severe impairments: joint dysfunction of the left hand and wrist; osteoarthritis of the right knee; cardiovascular infarction status-post stent placement; and asthma.   *Id.*   The ALJ also considered Plaintiff's high blood pressure, and determined it to be nonsevere.   Tr. 51.   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.*  The ALJ then determined that Plaintiff has the RFC to perform light work,[2] with the following limitations:

> [S]he would be limited to only occasional climbing of ladders, ropes and scaffolds; occasional climbing of ramps and stairs; and occasional stooping, crouching and crawling.  [Plaintiff] could only do occasional gross manipulation with her left non-dominant hand.  [Plaintiff] must avoid concentrated exposure to extreme cold and extreme heat; concentrated exposure to wetness and humidity; and concentrated exposure to fumes, odors, dust, gases and poorly ventilated areas.

Tr. 52.  Next, the ALJ found Plaintiff is unable to perform her past relevant work ("PRW") as a retail cashier, which is light semi-skilled work with a specific vocational preparation ("SVP") level of 3, because of the bilateral handling requirements of the job.  Tr. 55.  After considering Plaintiff's age (49 at the time of the hearing), education (high school and one year of college), work experience, RFC and the testimony of the VE, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as production inspector, shipping checker and clerical assistant.  Tr. 56, 87-96.  He therefore

---

[2] The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

concluded Plaintiff has not been under a disability from August 21, 2010 through the date of the decision.   Tr. 57.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 1-7.   Accordingly, the ALJ's decision is the final decision of the Commissioner. Plaintiff filed a Complaint in this Court on December 28, 2015.   Doc. 1.   Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Docs. 13, 14.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his [PRW]; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion

through step four; and, at step five, the burden shifts to the Commissioner. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

"The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.,* 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## IV. Discussion

### a. *Whether substantial evidence supports the ALJ's finding that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy*

The ALJ found that Plaintiff has PRW as a cashier. Tr. 55. The ALJ determined, however, that "based on the [VE's] testimony, [Plaintiff] is unable to do her [PRW] due to the bilateral handling requirements of this job." *Id.* The ALJ also concluded that considering Plaintiff's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that Plaintiff can perform. Tr. 56. To support his findings, the ALJ first noted that Plaintiff is not capable of performing the full range of light work due to additional limitations. *Id.* "To determine the extent to which these limitations erode the unskilled light occupational base," the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. *Id.* The VE testified that, given all of these factors, the individual would be able to

perform the requirements of representative occupations such as production inspector, Dictionary of Occupational Titles ("DOT") No. 741.687-101; shipping checker, DOT No. 222.587-018; and clerical assistant, DOT No. 239.567-010. *Id.*, Tr. 89.

Although the ALJ found that the VE's testimony is inconsistent with the information contained in the DOT, he noted "there is a reasonable explanation for this discrepancy," explaining:

> The [VE] testified that the jobs listed above would require no more than occasional use of [Plaintiff's] non-dominant left hand. Although the [DOT] does not specify the manipulative requirements for [Plaintiff's] non-dominant hand in the positions identified, the testimony is based on the [VE's] observation of the jobs in question and knowledge regarding how the jobs are generally performed.

Tr. 56-57.

Plaintiff argues that the three jobs identified by the VE are more demanding than her PRW because the identified jobs require frequent to constant use of the hands. Doc. 17 at 10, 14-15; Tr. 55, 88. Plaintiff also asserts that the VE exaggerated the numbers of jobs in the national economy Plaintiff can perform because the identified numbers of jobs include various occupations that Plaintiff cannot perform. Doc. 17 at 11-14; Tr. 88. The Commissioner responds that Plaintiff's argument is based on her interpretation of job information provided by Job Browser Pro, a commercially-available job information resource, which, among other things, was not before the ALJ at the time of his decision. Doc. 19 at 15-16. The Commissioner further claims that the ALJ is not required give priority to information from Job Browser Pro over the VE's testimony. *Id.* at 16-17.

The Social Security regulations clearly permit the Commissioner to rely on the testimony of a VE for her knowledge or expertise.  *See* 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e), 416.960(b)(2), 416.966(e).  Moreover, a VE may rely on her knowledge and expertise without producing detailed reports or statistics in support of her testimony.  *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010); *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012); *see also Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.").  Thus, resources such as commercially available software and job information, including Job Browser Pro, may be used by the VE, provided they are not the sole resource used by the VE without any testimony or other evidence.  *See Thompson v. Comm'r of Soc. Sec.*, No. 2:15-cv-53-FtM-CM, 2016 WL 1008444, at *6 (M.D. Fla., Mar. 15, 2016) (citing cases that allow the use of software when the software was one resource, but not the sole resource, on which the VE relied upon in making the assessment).  Therefore, the VE here was permitted but not required to use commercially-available software, including Job Brower Pro, to support her testimony.

Even if the ALJ had considered the information from Job Browser Pro, which the Commissioner accurately points out was not before him, Plaintiff does not show that the ALJ must give priority to that information over the VE's testimony.  Doc. 17 at 10-11.  On the contrary, the ALJ's "preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE."  *Jones v. Apfel,*

190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted).   If the VE "determine[s] whether there are jobs in the region which the claimant can perform with her precise disabilities or limitations," even "the DOT does not control."   *Id.* at 1229.   Hence, even "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."   *Id.* at 1229-30.   Similarly, to the extent that the VE's testimony including the numbers of jobs Plaintiff can perform conflicts with the information provided by Job Browser Pro, the Court finds that the VE's testimony trumps the information provided by Job Browser Pro.   Doc. 17 at 11-13; *see* 190 F.3d at 1229.

Moreover, if there is any conflict between the evidence provided a VE and the DOT, the ALJ must "obtain a reasonable explanation for the apparent conflict."   SSR 00-4p, 2000 WL 1898704, at *4.   Furthermore, the ALJ "must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled."   *Id.*   Here, the ALJ complied with his obligation under SSR 00-4p and resolved the discrepancy between the VE's testimony and the DOT.   Tr. 93-96.   During the hearing before the ALJ, the ALJ asked the VE to assume, among other limitations, no more than occasional use of the non-dominant hand.   Tr. 88.   The VE identified three representative occupations — production inspector, shipping checker, and clerical assistant — as the jobs that a hypothetical individual with the limitations listed by the ALJ can perform.   Tr. 94.   The VE testified during the hearing that her testimony is inconsistent with the DOT because her testimony is based on "the DOT descriptions of the essential tasks of the job and [her] observations of the job, and how the job is generally performed" whereas the

DOT "does not specifically state the degree of bimanual dexterity for occupations," such as reaching, handling, and fingering.   Tr. 96.   The ALJ's opinion considers the VE's explanation for the discrepancy between the VE's testimony and the DOT.   Tr. 56-57.   As a result, the ALJ complied with SSR 00-4p and obtained a reasonable explanation for the conflict between the VE's testimony and the DOT.   SSR 00-4p, 2000 WL 1898704, at *4.

With regard to the first category of jobs with DOT No. 741.687-101, Plaintiff asserts that the jobs require constant exposure to atmospheric conditions, although the ALJ determined that Plaintiff must avoid constant exposure to fumes, odors, dust, and gases.   Doc. 17 at 11.   Plaintiff does not accurately state the ALJ's finding, however, because the ALJ found that Plaintiff must avoid "*concentrated*," not *constant*, "exposure to fumes, odors, dust, gases and poorly ventilated areas."   Tr. 52 (emphasis added).   Similarly, as the Commissioner accurately points out, Plaintiff misinterprets the VE's testimony by arguing that the VE found Plaintiff's PRW was unskilled.   Doc. 17 at 13.   On the contrary, the VE testified during the hearing that Plaintiff's PRW as a retail cashier is "semiskilled, but borderline between unskilled and semiskilled, and skills are not transferable."   *Id.*; Tr. 87; Doc. 19 at 19.

Finally, Plaintiff argues that an employability evaluation by Brian J. Daly, M.S., CRC, CLCP ("Daly"), does not support the ALJ's findings.   Doc. 17 at 15; Tr. 9-24.   Because Daly's evaluation is dated August 13, 2014, approximately four months after the ALJ's decision, the Court will address this argument when analyzing

whether the Appeals Council properly analyzed Daly's evaluation as new evidence. Tr. 9-24.

> b. *Whether substantial evidence supports the determination of the ALJ concerning Plaintiff's RFC*

### i. Plaintiff's subjective complaints and testimony

Plaintiff argues that in assessing her RFC, the ALJ did not consider Plaintiff's testimony regarding balancing, walking, lifting, and bending. Doc. 17 at 16, 20-21. Plaintiff further asserts that the ALJ inadequately assessed Plaintiff's lifting, reaching, standing and balancing capacity, and "how they erode the occupational base for light work." Doc. 17 at 20. Here, Plaintiff primarily is questioning what, if any, weight the ALJ accorded to her testimony on her abilities in these areas. *Id.* Plaintiff also takes issue with her credibility as to the severity of her impairments. *Id.* at 22. The Commissioner responds that Plaintiff does not provide any authority requiring the ALJ to consider every symptom alleged by Plaintiff. Doc. 19 at 9. The Commissioner also argues that the ALJ thoroughly discussed the evidence on the record for discounting Plaintiff's subjective complaints and testimony. *Id.*

As the Commissioner accurately asserts, the court has "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not long enough to enable [the court] to conclude that [the ALJ] considered her medical conditions as a whole.'" *Dyer*, 395 F.3d at 1211 (citation omitted). Hence, the ALJ is not required to discuss all of Plaintiff's testimony and subjective complaints in his decision. *See id.*

Furthermore, the ALJ here considered Plaintiff's testimony and subjective complaints, but found them to be not entirely credible.   Tr. 54.   The Eleventh Circuit has long recognized that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).   If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a claimant's alleged symptoms and their effect on the claimant's ability to work.   *See* 20 C.F.R. §§ 404.1529(c)(1); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Foote*, 67 F.3d at 1561.   The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.   *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Here, contrary to Plaintiff's argument that the ALJ did not address Plaintiff's testimony, the Court finds that the ALJ properly considered and evaluated Plaintiff's testimony regarding the effects of her alleged symptoms on her activities.   Doc. 17 at 16, 20-23.   Based on the requirements of 20 C.F.R. § 404.1529, the ALJ considered Plaintiff's symptoms and the extent to which the symptoms reasonably can be accepted as consistent with the objective medical and other evidence.   Tr. 52-53. Properly discussing the standard and the medical evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to

cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."   Tr. 54.

Although the ALJ did not refer to Plaintiff's specific testimony regarding her activities, the ALJ noted, "[Plaintiff] has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."   *Id.*   The ALJ further explained:

> Despite the allegations of symptoms and limitations preventing all work, the record reflects that [Plaintiff] went on a vacation since the alleged onset date.   Although a vacation and a disability are not necessarily mutually exclusive, [Plaintiff's] decision to go on a vacation tends to suggest that the alleged symptoms and limitations may have been overstated.   Although [Plaintiff] has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in [Plaintiff's] favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. . . . Although [Plaintiff] has alleged various side effects from the use of medications, the medical records, such as office treatment notes, do not corroborate those allegations. . . . Another factor influencing the conclusions reached in this decision is [Plaintiff's] generally unpersuasive appearance and demeanor while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of [Plaintiff's] allegations and [Plaintiff's RFC.] . . . While the hearing was short-lived and cannot be considered a conclusive indicator of [Plaintiff's] overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight. . . .

*Id.*

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.   Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."   *Wilson*, 284 F.3d at 1225 (internal citations omitted).   "The question is not .

. . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."   *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).   "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court."   *Foote*, 67 F.3d at 1562.   Here, the Court finds that the ALJ clearly articulated the reasons for his credibility findings.   Tr. 54.

Nonetheless, Plaintiff argues that in discounting her credibility, the ALJ improperly engaged in "sit and squirm" jurisprudence by relying on his own observations.   Doc. 17 at 22-23.   The Commissioner asserts that the ALJ did not engage in "sit and squirm" jurisprudence but appropriately noted Plaintiff's demeanor and appearance in assessing Plaintiff's credibility.   Doc. 19 at 9.

The Eleventh Circuit held that an ALJ engages in "sit and squirm" jurisprudence when "an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).   The ALJ engaged in sit and squirm jurisprudence will deny the claimant's claim if the claimant does not meet the index.   *Id.*   For example, the ALJ engages in sit and squirm jurisprudence when he makes a medical assessment, "i.e., [the claimant] exhibited no significant observable physical signs which could be related to constant pain. . . ."   *Id.* (internal quotation marks omitted).

On the contrary, here the Court finds that the ALJ did not engage in sit and squirm jurisprudence but properly noted Plaintiff's appearance and demeanor in

assessing Plaintiff's credibility.   Tr. 54; *see id.*   The Commissioner accurately points out, "[t]he ALJ is not prohibited from considering the claimant's appearance and demeanor during the hearing" in assessing the credibility of the claimant's subjective testimony.   *Marcia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (internal quotation marks omitted).   As a result, the ALJ may rely on the fact that Plaintiff did not appear to be in pain as one of several reasons to discredit Plaintiff's subjective complaints and testimony.   *See id.*; *Cormier v. Comm'r of Soc. Sec.*, 522 F. App'x 468, 470 (11th Cir. 2013).   Here, as the ALJ clearly indicated, the ALJ did not make a medical assessment but noted Plaintiff's lack of discomfort during the hearing as one of many reasons to discount her credibility.   Tr. 54.   Based on the above reasoning, the Court finds that the ALJ properly discounted Plaintiff's subjective complaints and testimony.   *Id.*

### ii.   The weight given to Plaintiff's treating physician

In assessing Plaintiff's RFC, the ALJ discussed the medical records of Plaintiff's treating physician, Daniel W. Bienkowski, M.D.   Tr. 53-54.   The ALJ noted that Dr. Bienkowski "provided a medical source statement concerning [Plaintiff's] left hand injury on October 31, 2013" as well as treatment notes.   *Id.*

The ALJ discussed that on November 9, 2010, Dr. Bienkowski "performed a carpal tunnel release on [Plaintiff's] epineurolysis median nerve at the level of the left wrist."   Tr. 53, 364-66.   As part of Plaintiff's post-operative plan, Dr. Bienkowski noted that Plaintiff's left wrist had dorsiflexion of 10 degrees and palmar flexion of 30 degrees, although her wrist lacked 45 degrees of supination.   Tr. 365.

He also indicated that Plaintiff "had almost full pronation," despite having "a few degrees of radial and ulnar deviation." *Id.* Dr. Bienkowski recommended that Plaintiff have occupational therapy to desensitize the scar and incision and to maintain mobility of her wrist, and also opined that Plaintiff may need a further osteotomy for the mobility of her wrist. *Id.*

On December 13, 2010, Plaintiff had an x-ray of her left wrist, which revealed that the major fracture fragments were in satisfactory alignment and unchanged from the prior study of October 2010. Tr. 363. Although James Guanci, M.D., who examined Plaintiff's x-ray, noticed a fairly pronounced regional osteopenia with mild associated soft tissue swelling, he found no acute fracture, dislocation, bony destructive lesion, or abnormal periosteal bone formation. *Id.* On March 2, 2011, Dr. Bienkowski removed volar plate fixations from Plaintiff's left wrist in efforts to improve the range of motion. Tr. 356-57. He noted that Plaintiff had a severely comminuted left distal radius fracture. Tr. 356. Although Dr. Bienkowski indicated that he considered ulnar shortening or osteotomy to relieve ulnar impingement, Plaintiff elected to defer the ulnar osteotomy. *Id.* As Plaintiff's post-operative plan, Dr. Bienkowski included, "[g]entle range of motion," and "continu[ing] elevation," as well as "obtain[ing] further imaging of her wrist . . . to check the radiocarpal joint." Tr. 357. The ALJ discussed Dr. Bienkowski's surgical notes and Plaintiff's x-ray in assessing Plaintiff's RFC. Tr. 53.

On April 18, 2012, Plaintiff had a bone density exam per Dr. Bienkowski's request. Tr. 352-53. Dr. Guanci, who evaluated the exam, noted that the most

clinically significant areas are "the lumbar spine from L2-L4" and "the femoral necks." Tr. 352. Based on the exam, Dr. Guanci opined that Plaintiff is osteoporotic and has a high risk of fracture. Tr. 352-53. Dr. Guanci, however, did not discuss at all Plaintiff's left wrist or right knee. *Id.* Although the ALJ did not explicitly discuss this exam in his decision, he referred to this exam as part of his reasons for according little weight to Dr. Bienkowski's medical source statement. Tr. 55. The ALJ noted, "there is no record of Dr. Bienkowski treating [Plaintiff] between April 18, 2012 (Exhibit 1F, page 35) and October 31, 2013," implying his consideration of the April 18, 2012 exam. *Id.*

Approximately one year and a half later, on October 31, 2013, Dr. Bienkowski treated Plaintiff for her right tibia stress fracture and left wrist. Tr. 682-84. Plaintiff reported to Dr. Bienkowski that she continues having pain on her knee and has trouble walking more than one block. Tr. 682. She also indicated that her knee tightens up, becomes painful, and occasionally buckles, although there was no locking. *Id.* She noted that she has some back pain and trouble with balance, but has no history of arterial insufficiency. Tr. 683.

According to Dr. Bienkowski, Plaintiff had "[nine] months status post a right tibial stress fracture," which was treated with a fracture brace. Tr. 682. He noted that although Plaintiff's pain had subsided, Plaintiff had no tenderness at the distal tibia. *Id.* Dr. Bienkowski discussed that Plaintiff had "old hardware" and a history of a previous tibial plateau fracture, and her right knee has posttraumatic arthritis. *Id.* Furthermore, Dr. Bienkowski indicated that since he saw Plaintiff one year prior

to this visit, Plaintiff had a coronary, had a stent placed, and continues treatment for osteoporosis, asthma, hypertension, reflux, and restless leg syndrome.   *Id.*

Dr. Bienkowski also examined an x-ray of Plaintiff's right knee, three views of which revealed subchondral sclerosis and joint space narrowing.   Tr. 683.   The x-ray also showed a tibial buttress plate with grafting and sclerosis of the metaphysis.   *Id.*   Dr. Bienkowski found that Plaintiff has patellofemoral crepitus, diffuse joint tenderness, atrophy of the calf, and an ankle edema.   *Id.*

Dr. Bienkowski found, however, that although he noticed multiple scars over the anterior aspect of the proximal tibia, there is no redness or induration.   *Id.*   Plaintiff also could raise her leg straight "with a 10 [degree] lag at the knee," and her right knee had a range of motion for 10 to 90 degrees.   *Id.*   Dr. Bienkowski found that Plaintiff had stable collateral ligaments and no recurvatum, and the drawer signs were negative.   *Id.*   In addition, Plaintiff had no calf tenderness as well as no tenderness over the right tibial area where the previous stress fracture was located in the metaphysics.   *Id.*

Based on his evaluation of Plaintiff, Dr. Bienkowski diagnosed Plaintiff with posttraumatic arthritis in her right knee status post a severe tibial plateau fracture, scarring and weakness in her right knee after multiple surgical procedures, bone grafting, and internal fixation, and healed stress fracture in her right tibia related to tibial alignment and osteopenia.   *Id.*   He recommended that Plaintiff take Tylenol

for pain, calcium, vitamin D, and Fosamax,[3] use a cane for distance walking, and check for progress in six months.   *Id.*

Dr. Bienkowski also treated Plaintiff for her left wrist on October 31, 2013. *Id.*   Dr. Bienkowski noted that Plaintiff suffered a severe left distal radius fracture on August 20, 2010.   *Id.*   Plaintiff also reportedly had a markedly comminuted intra-articular fracture and failed volar plate fixation.   *Id.*   Dr. Bienkowski opined that when revised, Plaintiff's comminuted intra-articular fracture and failed volar plate fixation caused inflammation and fibrosis of the median nerve that became "quite disabling."   Tr. 683-84.   In addition, Dr. Bienkowski discussed that Plaintiff had two neurolysis procedures, the last being quite extensive down to the metacarpophalangeal level.   Tr. 684.   He indicated that Plaintiff also had a Darrach procedure for ulnar prominence.   *Id.*   As a result, Dr. Bienkowski opined that Plaintiff has a painful and sensitive left hand and a median nerve deficit as well as cold sensitivity and very limited use of her left hand.   *Id.*

According to Dr. Bienkowski's examination, Plaintiff's left wrist showed atrophy of the intrinsics, had dorsiflexion of 10 degrees and palmar flexion of 20 degrees, and lacked 20 degrees of pronation and 45 degrees of supination.   *Id.*   Dr. Bienkowski also found that although Plaintiff had no radial or ulnar motion, she had pain with stress.   *Id.*   Plaintiff exhibited hypersensitivity in the median nerve distribution, a very weak grip, and a weak pinch.   *Id.*

---

[3] Fosamax slows bone loss while increasing bone mass, which may prevent bone fractures.   Https://www.drugs.com/fosamax.html (last visited Mar. 27, 2017).

Dr. Bienkowski also evaluated an x-ray of Plaintiff's left wrist, three views of which demonstrated residues of a severely comminuted intra-articular fracture. *Id.* Furthermore, Dr. Bienkowski opined that there are disruption of the radiocarpal joint, joint space narrowing, sclerosis, small fragments of metal left from the previous volar plate, and osteoporosis suggesting disuse. *Id.* Based on his examination, Dr. Bienkowski concluded that Plaintiff's left hand "has lost 100% of the function" and diagnosed Plaintiff with status post severe intra-articular left distal radius fracture complicated by posttraumatic arthritis and median neuropathy from fibrosis. *Id.* He recommended, among other plans, that Plaintiff should "[r]emain out of work permanently." *Id.* The ALJ discussed Dr. Bienkowski's treatment notes from October 31, 2013 in assessing Plaintiff's RFC. Tr. 54.

In addition, on October 31, 2013, Dr. Bienkowski provided a manipulative limitations medical source statement. Tr. 680-81. He identified as Plaintiff's signs or symptoms that affect her shoulders, elbows, wrists, or fingers: tenderness, paresthesia, pain, joint deformity, muscle weakness, reduced grip strength, limitation of motion, and muscle atrophy. Tr. 680. He also indicated Plaintiff's left hand and wrist as the location of pain and paresthesia. *Id.* Dr. Bienkowski opined that although Plaintiff's left arm has no limitations in weight-lifting, Plaintiff cannot use at all during an eight-hour workday her hands to grasp, turn, and twist objects, her fingers for fine manipulations or her arms to reach overhead and in front of her body. Tr. 681.

The ALJ discussed Dr. Bienkowski's treatment notes and accorded little weight to Dr. Bienkowski's medical source statement because:

> [his] treatment notes do not support his given medical source statement. His treatment and surgery notes do not suggest that [Plaintiff] has no use of her left hand. Further, his medical source statement relies on [Plaintiff's] self-reported limitations and does not contain a sufficient written rationale. Although Dr. Bienkowski provides one treatment note concerning [Plaintiff's] right knee condition, there is no evidence that he treated this knee condition prior to his giving the medical source opinion on the limitations it causes. Further, the medical evidence of record as a whole contains little reference to [Plaintiff's] knee condition before Dr. Bienkowski's October 31, 2013[] treatment note. Additionally, although the two medical source statements are dated October 31, 2013, there is no record of Dr. Bienkowski treating [Plaintiff] between April 18, 2012 (Exhibit 1F, page 35) and October 31, 2013. Although Dr. Bienkowski stated that [Plaintiff] is 'disabled,' it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations . . . Finally, the decision whether [Plaintiff] is disabled is specifically reserved to the Commissioner. . . .

Tr. 53-55.

Plaintiff argues that the ALJ did not properly consider the medical records of Dr. Bienkowski, and also questions the weight the ALJ accorded to Dr. Bienkowski's opinion. Doc. 17 at 16, 21-24; Tr. 55. First, Plaintiff asserts that the ALJ did not consider Dr. Bienkowski's recommendation to use a cane for distance walking. Doc. 17 at 16-17. The Commissioner responds that Dr. Bienkowski's recommendation conflicts with Plaintiff's testimony during the hearing before the ALJ. Doc. 19 at 13. As the Commissioner accurately argues, when the ALJ asked Plaintiff if she uses "any kind of assistive devices, cane, walker, [or] wheelchair," Plaintiff clearly answered, "[n]o." Tr. 72.

Furthermore, although the ALJ did not explicitly note Dr. Bienkowski's specific recommendation to use a cane for distance walking, the ALJ discussed the physician's treatment notes from October 31, 2013, implying his consideration of Dr. Bienkowski's recommendation.   Tr. 54.   As noted, the ALJ is not required to discuss this specific recommendation because he need not "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not long enough to enable [the court] to conclude that the ALJ considered her medical conditions as a whole.'"   *Dyer*, 395 F.3d at 1211.   Clearly, that is not the case here.

Next, Plaintiff asserts that the ALJ erred by according little weight to Dr. Bienkowski's opinion.   Doc. 17 at 23-24.   The Commissioner claims that the ALJ properly accorded little weight to Dr. Bienkowski's opinion because the ALJ provided good reasons for his decision, and whether Plaintiff is disabled or not is an issue reserved for the Commissioner.   Doc. 19 at 10-13.

Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ."   20 C.F.R. § 404.1527(c)(2).   Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.

SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight,

unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014)

(citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*,

125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D.

Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not

bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating

physician's opinion was conclusory or inconsistent with the doctor's own medical

records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

The Court finds that the ALJ adequately articulated specific justifications for

discounting Dr. Bienkowski's opinion, and the record reflects good cause for doing so.

Tr. 55; *see e.g.*, *Crawford*, 363 F.3d at1155; *Phillips*, 357 F.3d at 1241. First, the

review of Dr. Bienkowski's treatment notes reveals that the ALJ correctly noted,

"[a]lthough Dr. Bienkowski provides one treatment note concerning [Plaintiff's] right

knee condition, there is no evidence that he treated this knee condition prior to his

giving medical source opinion [dated October 31, 2013] on the limitations it causes."

Tr. 55, 352-53, 356-57, 363-66, 682-84. Furthermore, Dr. Bienkowski's own surgical

and treatment notes do not support that Plaintiff's left hand has no use, as Plaintiff

exhibited a very weak grip and a weak pinch on October 31, 2013 and almost full

pronation on November 9, 2010. Tr. 365, 684. The December 13, 2010 x-ray of

Plaintiff's wrist did not show any acute fracture, dislocation, bony destructive lesion,

or abnormal periosteal bone formation. Tr. 363. Dr. Guanci, who examined

Plaintiff's bone density exam from April 18, 2012, did not discuss at all Plaintiff's left wrist.   Tr. 352-53.   Lastly, as the ALJ accurately observed, there is no evidence on the record that Dr. Bienkowski treated Plaintiff between April 18, 2012 and October 31, 2013.   Tr. 55, 352-53, 682-84.

To the extent Plaintiff points to portions of Dr. Bienkowski's treatment notes that may contradict the evidence relied upon by the ALJ, "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly."   *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389-409).   As a result, the Court finds that the ALJ properly discounted the weight given to Dr. Bienkowski's medical source statement.   Tr. 55, 680-81.

In addition, Plaintiff argues that the ALJ should have contacted Dr. Bienkowski for clarification or sought the opinion of a medical consultant.   Doc. 17 at 22, 24.   The Commissioner asserts that the ALJ was not required to recontact Dr. Bienkowski.   Doc. 19 at 13-14.

It is well established that the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel,* 129 F.3d 1420, 1422-23 (11th Cir. 1997) (holding that the ALJ has an affirmative duty to develop the record fully and fairly).   The Supreme Court has held that "Social Security proceedings are inquisitorial rather than adversarial.   It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting

benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).   The Social Security regulations also address this obligation and the relevant time period:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you filed your application.

20 § C.F.R. 416.912(d); *see also Ellison*, 355 F.3d at 1276 (holding that "the ALJ was in no way bound to develop the medical record for 1999 and 2000" when the claimant's application was filed on December 14, 1998).   Nevertheless, it cannot be overlooked that a claimant bears the burden of proving that he is disabled and is responsible for producing evidence in support of his claim.   *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912(c)).

In determining whether the ALJ failed in his duty to develop the record, the Court is "guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice'" necessitating a remand to the Commissioner for further development of the record.   *Graham*, 129 F.3d at 1423 (citing *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)).   If the record was sufficient for the ALJ to evaluate Plaintiff's impairments and functional abilities and does not show the kind of gaps in the evidence necessary to demonstrate prejudice, there is no error, and the Commissioner's decision must stand.   *See id.*

Similarly, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Adm.*, 496 F.3d 1253, 1268 (11th Cir. 2007); *Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007) ("[T]he ALJ need not order an

additional consultative examination where the record was sufficient for a decision."). The ALJ, however, "should recontact a claimant's treating physician if the evidence in the record is otherwise inadequate to determine whether the claimant is disabled." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).   Social Security Ruling 96-5p also states that:

> if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996).

Here, Plaintiff does not argue that the ALJ did not have enough evidence on the record to determine whether Plaintiff is disabled.   Doc. 17 at 20-22; *Ingram*, 496 F.3d at 1268; *Robinson,* 365 F. App'x at 999.   Instead, Plaintiff inaccurately states the law by asserting that the ALJ "had a duty to recontact medical sources if the treating doctor's opinion was inconsistent with the medical records."   Doc. 17 at 24. Furthermore, the Court finds that the ALJ had sufficient evidence on the record to determine whether Plaintiff is disabled, evidenced by the ALJ's detailed discussion of the evidence including Plaintiff's medical records from 2010 to 2013, the VE's testimony, and Plaintiff's subjective complaints and testimony.   Tr. 51-57.

With regard to the severity of Plaintiff's impairments, as noted, the Court finds that the ALJ properly discounted Plaintiff's subjective complaints and testimony and accorded little weight to Dr. Bienkowski's opinion.   Tr. 54-55.   Plaintiff, however, does not provide any additional evidence, but relies on her subjective complaints and

testimony and Dr. Bienkowski's medical source opinion and treatment notes from October 31, 2013 to support her argument that her physical impairments are severe and affect her basic ability to work.   Doc. 17 at 16-17, 22-23.   Furthermore, Plaintiff argues that the ALJ did not assess her reaching capacity, but also does not provide any evidence that establishes her limitations in reaching.   *Id.* at 20.   "The claimant is responsible for providing medical evidence demonstrating an impairment and how severe the impairment is during the relevant time period."   *Castle*, 557 F. App'x at 852 (citing 20 C.F.R. § 404.1512(c)); *Ellison*, 355 F.3d at 1276 ("[T]he claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.").   As a result, the Court finds that Plaintiff does not meet her burden to provide medical evidence demonstrating the severity of her impairments.   *Castle*, 557 F. App'x at 852 (citing 20 C.F.R. § 404.1512(c)); *Ellison*, 355 F.3d at 1276.

Based on the above analysis, the Court finds that the ALJ properly discounted Plaintiff's subjective complaints and testimony and accorded little weight to Dr. Bienkowski's opinion.   Tr. 53-55.

### c.   Whether the Appeals Council properly evaluated new evidence

Approximately four months after the ALJ's decision dated April 21, 2014, vocational expert Brian Daly performed an employability evaluation of Plaintiff on August 13, 2014.   Tr. 9-24.   Based on the information furnished to him, his telephonic interview with Plaintiff, and his education, training, and experience, Daly opined that Plaintiff has significant impairments that impede vocational

development, including sitting, standing, walking, twisting, bending, stooping, kneeling, and squatting.   Tr. 9, 11, 23.   Daly concluded that Plaintiff is unable to perform any of her past relevant work as a cashier/checker and has no transferable skills to other occupations.   Tr. 24.   He further determined that Plaintiff is unable to perform any sedentary, light, medium, heavy, or very heavy work existing in the local or national economy on a sustained, full-time, regular, competitive basis.   *Id.* Daly also supported Dr. Bienkowski's opinion that Plaintiff's left hand is not able to function at all, and Plaintiff should remain out of work permanently.   Tr. 24, 684.

In its decision denying Plaintiff's request for review, the Appeals Council noted that it considered Daly's August 13, 2014 evaluation.   Tr. 2.   The Appeals Council indicated that Daly's evaluation "does not show a reasonable probability that, either alone or when considered with the other evidence of record, would change the outcome of the decision (20 C.F.R. 405.401(c))."   *Id.*

Plaintiff argues that the Appeals Council erred by not considering the post-hearing evaluation of Daly.   Doc. 17 at 17-20.   First, Plaintiff asserts that the Appeals Council did not provide detailed explanations for their finding regarding Daly's evaluation.   Doc. 17 at 17.   The Commissioner responds that the Appeals Council need not provide a detailed basis of evidence submitted by Plaintiff when it denied Plaintiff's request for review.   Doc. 19 at 22.

As the Commissioner accurately asserts, the Eleventh Circuit held, "[t]he Appeals Council is not required to make specific findings of fact when it denies review.   It need only 'consider the additional evidence' that is new, material, and

chronologically relevant." *Parks ex rel. D.P. v. Comm'r, Soc. Sec. of Admin.*, 783 F.3d 847, 852 (11th Cir. 2015) (citation omitted).   The Eleventh Circuit found that the "Appeals Council was not required to do more," if the "Appeals Council stated that it considered the new evidence that [the plaintiff] submitted, and the Appeals Council added the evidence to the record." *Id.*   Accordingly, the Court finds that the Appeals Council here was not required to provide a detailed explanation because the Appeals Council considered Daly's evaluation and added that evidence to the record. Tr. 2; *see id.*

Next, Plaintiff argues that Daly's evaluation is material because Daly rendered his evaluation based on a more comprehensive review of Plaintiff's medical evidence than the VE here did.   Doc. 17 at 19.   "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262 (citation omitted).   Although the Appeals Council has the discretion not to review the ALJ's denial of benefits, *See* 20 C.F.R. § 416.1470(b), it "must consider new, material, and chronologically relevant evidence" that the claimant submits. *Ingram,* 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015).   Whether evidence meets the new, material, and chronologically relevant standard is a question of law subject to our *de novo* review by the reviewing court.   *Washington*, 806 F.3d at 1321 (11th Cir. 2015).

New evidence is noncumulative. *Id.* at 1321 n. 6 (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)). For evidence to be "new and noncumulative," it must relate to the time period on or before the date of the ALJ's decision, "but was not discovered until after the ALJ hearing." *See* 20 C.F.R. § 404.970(b). The Commissioner's policies state that new evidence is chronologically relevant only if it is "dated before or on the date of the ALJ decision, or [] post-dates the ALJ decision but is reasonably related to the time period adjudicated by the ALJ." *See* HALLEX § I-3-3-6(B)(3), 1993 WL 643129 (S.S.A.); 20 C.F.R. §§ 404.970(b), 416.1470(b). Thus, a treating physician's opinion based on treatment occurring after the date of the ALJ's decision may nevertheless be chronologically relevant. *Washington*, 806 F.3d at 1322-23. Furthermore, evidence is material if "there is a reasonable possibility that [it] would change the administrative result." *Id.* at 1321 (quotation marks omitted) (citing *Hyde v. Bowen*, 823 F.2d 546, 459 (11th Cir. 1987)).

Here, the Court finds that Daly's evaluation is not material because as the Appeals Council held, "there is no reasonable probability that [it] would change the administrative result." *Id.* Daly "is not a medical source at all, much less an 'acceptable medical source.'" *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 784 (11th Cir. 2016) (citing SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006)). Rather, Daly is a non-medical source, who evaluated Plaintiff in his professional capacity as a vocational evaluator. Tr. 9-24, 30; SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). "Although the ALJ should consider evidence from non-medical sources, the ALJ is not required to assign the evidence any particular weight." *Farnsworth*, 636

F. App'x at 784-85 (citing SSR 06-03p, 2006 WL 2329939, at *3-4 (Aug. 9, 2006)). "Instead, whether and how much weight the ALJ should give this kind of evidence depends upon the particular facts of the case and a variety of factors, including whether the opinion is consistent with other evidence in the record." *Id.* at 785 (citing SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006)).

Hence, given that Daly's evaluation is inconsistent with the VE's testimony and the ALJ's RFC findings, the Court finds that even if the ALJ considers Daly's evaluation, it is questionable that the ALJ would assign any weight to Daly's evaluation. *Id.*; Tr. 52, 88-96. As a result, the Court finds that Daly's evaluation would not change the ALJ's decision. *Washington*, 806 F.3d at 1321.

## V.    Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 30th day of March, 2017.


CAROL MIRANDO
United States Magistrate Judge


Copies:
Counsel of record